### FRED W. OSBORNE
*vs.*
### CANADIAN PACIFIC RAILWAY COMPANY.

### Aroostook.   Opinion March 15, 1895.

*Railroads. Fences. Improved Lands. R. S., c. 51, § 36.*

By R. S., c. 51, § 36, railroads are required to make legal sufficient fences along the line of their location, where the road passes through "inclosed or improved land."

The plaintiff's house lot is situated in the village of Fort Fairfield where the railroad runs along between and parallel with Main street and the river, in the rear of the plaintiff's buildings. The lot extends back about nine rods to the river, and is not inclosed on either side, and no part of it is cultivated as a garden, but was a village residence-lot occupied by the plaintiff with dwelling-house and appurtenances, with a barn on that part between the street and the railroad. A portion of the barn was within the railroad location.

*Held;* that this was "improved land" within the meaning of R. S., c. 51, § 36, and the railroad company was bound to fence along the line of the road passing through the same.

ON EXCEPTIONS.

This was an action to recover the value of two swine of the plaintiff, killed by the train of the defendant company on its railroad track in Fort Fairfield. In one count, the plaintiff alleged the want of a fence on the line of the location of the defendant's railroad across the plaintiff's land: and it was a material question at the trial, whether the defendant company was bound to maintain a fence there. The jury returned a verdict for the plaintiff.

The place was in a thickly-settled part of the village of Fort Fairfield, where the railroad runs along for some distance between and parallel with Main street and Aroostook river. The distance from the street to the river is about nine rods, and from the street to the railroad track is about six rods. The plaintiff's lot extended from the street to the river, subject to the location of the defendant's railroad across the lot. The lot from the street to the railroad track was forty-six feet wide between the side lines. The track of the railroad was several feet above the natural surface of the land. The lot was not inclosed on either side, and no part of it was cultivated as a garden or farm, but was a village residence-lot occupied by the plaintiff with dwelling-house and appurtenances, including a barn on that part between the street and the railroad. The barn, under which the plaintiff's swine were kept, was eight feet from one side line of the lot, and two feet from the other. One corner of the barn was seven feet, and the other corner ten feet, from the nearest rail of the track.

There were other similar uninclosed residence lots, with similar buildings on the same side of the street, above and below the plaintiff's lot. The railroad crossed these other lots. There were also several ways or paths in the near neighborhood leading from the street to the railroad track and, about ten rods above the plaintiff's lot, was a cross-street crossing the railroad and the river.

The section foreman of defendant testified that he notified the plaintiff at the time of building the barn, that it was within the railroad location. The foreman also testified that a fence across the plaintiff's lot would impede the operation of snow-plows in clearing the track.

The swine were found by the jury to have passed directly from the barn across the line of the railroad location to the track.

Upon the foregoing evidence, the presiding justice ruled, as matter of law, that the plaintiff's land between the street and the railroad was "improved land" within the meaning of the statute, and that the defendant company was bound to maintain a fence across it, upon the line of the location. To this ruling the defendant seasonably excepted. The verdict being for the plaintiff the defendant took exceptions.

*J. B. Trafton* and *H. W. Trafton*, for plaintiff.

*Louis C. Stearns*, for defendant.

Railroads are not responsible for damages to domestic animals arising from want of a fence at points which do not admit of being properly fenced. 1 Redf. Rys. p. 515; *Tol. & Wabash Ry Co.* v. *Daniels*, 21 Ind. 256; *I. P. & C. Ry. Co.* v. *Truitt*, 24 Ind. 162; *Ill. Cent. Ry. Co.* v. *Williams*, 27 Ill. 48; *Perkins* v. *East. R. R. Co.* 29 Maine, 307.

The statute cannot require an impracticability. There must be exceptions to its application, if its application would prevent the proper and convenient discharge of the railway's public obligations and the exercise of its chartered and legal rights.

It cannot be required to fence out the public, to serve which is the purpose and object of its creation. Its depot grounds and sidings cannot be fenced and yet the statute contains no

exceptions as to them. It cannot be required to fence so as to impede the running of trains.

If the plaintiff's land be considered improved within the statute's meaning, it must fall within the exception, if there be an exception, because fencing against it would have been useless, for defendant could not fence across the highway and different roads and passageways contiguous to it, because it would have interfered with the discharge of defendant's functions as appears from the testimony of a witness that the fence would impede the running of a snow-plow necessary to clear the track of winters' snows.

SITTING: PETERS, C. J., FOSTER, WHITEHOUSE, WISWELL, STROUT, JJ.

FOSTER, J. The statute (R. S., c. 51, § 36,) is explicit, requiring railroad corporations to make legal and sufficient fences, and to maintain and keep them in good repair, along the line of their location, where the road passes through "inclosed or improved land."

The only question presented by the exceptions is whether the plaintiff's land between the street and the railroad is "improved land" within the meaning of the statute. If it is, the defendant is bound to fence it, and the defense fails. *Norris* v. *Androscoggin R. R. Co.* 39 Maine, 273.

The plaintiff's house lot is situated in the thickly-settled part of the village of Fort Fairfield where the railroad runs along between and parallel with Main street and the river, and in the rear of the plaintiff's buildings. The lot is forty-six feet wide on the street, and extends back to the river, a distance of about nine rods. The lot was not inclosed on either side, and no part of it cultivated as a garden, but was a village residence-lot occupied by the plaintiff with dwelling-house and appurtenances, and a barn on that part between the street and the railroad. The barn under which the plaintiff's swine were kept, and for the killing which this action was brought, was eight feet from one side line of the lot, and two feet from the other. A portion of the barn, as the case discloses, was within the railroad location.

We have no doubt that this was "improved land" within the meaning of the statute.

"Improved" is not a technical word having a precise legal meaning, when applied to real estate, but may mean land that is occupied. Bouvier, "Improve." As generally understood, "improved land" is that which is occupied, or made better by care or cultivation, or which is employed for advantage. Webster, "Improve." *Wilder* v. *M. C. R. R. Co.* 65 Maine, 332, 339.

Land uninclosed and used as a mill-yard was held, in the case last cited, to be "improved land." *A fortiori*, the land in question, appurtenant to a dwelling-house and barn, is improved land within the meaning of the statute.        *Exceptions overruled.*